UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MELANIE B. FLORIO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:19-cv-805 (AJT/TCB) |
| ANDREW M. SAUL, *Commissioner of Social Security*, | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Melanie B. Florio ("Plaintiff") seeks judicial review of the final administrative decision of Nancy A. Berryhill,[1] the Social Security Commissioner ("Defendant"), finding that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons articulated below, pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends that the Court deny Plaintiff's motion for summary judgment (Dkt. 16); grant Defendant's cross motion for summary judgment (Dkt. 19); and affirm Defendant's final decision.

---

[1] Plaintiff initially commenced this action against the former Acting Commissioner of Social Security Nancy Berryhill. However, pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, Commissioner of Social Security, in his official capacity, was substituted as party defendant in the above-captioned action. Commissioner Saul began his tenure on June 17, 2019. (*See* Dkt. 8.)

I. P<small>ROCEDURAL</small> B<small>ACKGROUND</small>

### A. Social Security Action

Plaintiff protectively filed her application for a period of disability and DIB on July 14, 2015, alleging disability beginning on July 1, 2012. (R. at 224.) Defendant first denied Plaintiff's claim on December 17, 2015, and then again on reconsideration on April 27, 2016. (R. at 133, 145.)

Plaintiff timely requested a hearing in front of an administrative law judge ("ALJ"). (R. at 152.) ALJ Kim Soo Nagle held a hearing on May 15, 2018. (R. at 53.) An impartial vocational expert, Edward Pagella, appeared at the hearing, and a non-attorney representative, Andrew Mathis, represented Plaintiff. (R. at 55.) At the hearing and through her representative, Plaintiff chose to amend her alleged onset date of disability to January 1, 2017. (R. at 59.) ALJ Nagle issued a decision on June 8, 2018, denying Plaintiff's claims. (R. at 33-52.)

Plaintiff then requested review of the ALJ's decision with the Appeals Council for the Office of Disability and Adjudication and Review. (R. at 215.) The Appeals Council denied Plaintiff's request for review on April 18, 2019, making Defendant's decision final. (R. at 1-6.)

### B. The Instant Action

Plaintiff sought review of Defendant's decision by filing a complaint in this Court on June 17, 2019 (Dkt. 1). Plaintiff alleges that "the denial of her disability claim is not supported by substantial evidence . . . including the weight of the evidence [give to her] her credibility, the medical opinions of her doctors, and any and all other applicable evidentiary issues, both in law and fact, and therefore the denial of her claim should be reversed or remanded for further administrative proceedings." (Dkt. 1 ¶ 6.) Defendant filed an answer on September 5, 2019 (Dkt. 10). Defendant also filed the certified Administrative Record under seal, pursuant to Local Civil

Rules 5(B) and 7(C)(1) on September 5, 2019. (*See* Dkt. 12.)

After the Court entered a briefing schedule (Dkt. 14), Plaintiff filed her motion for summary judgment on October 7, 2019 (Dkt. 16); Defendant filed its cross motion for summary judgment (Dkt. 19) and its memorandum in opposition to Plaintiff's motion for summary judgment (Dkt. 21) on October 25, 2019; and Plaintiff filed her reply to Defendant's cross motion for summary judgment (Dkt. 23) on November 8, 2019. Both Plaintiff and Defendant waived oral argument on their respective motions for summary judgment. (*See* Dkts. 18, 22.) Accordingly, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing

regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in mind, the undersigned evaluates the ALJ's findings and decision.

### III. THE ALJ'S DECISION

The first issue before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act. An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

*Step One*. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's amended AOD of January 1, 2017. (R. at 39.) Even though Plaintiff had worked after the AOD, the ALJ found that her work did not rise to the level of substantial gainful activity. (R. at 39.)

*Step Two*. At the second step, the ALJ found Plaintiff's multiple sclerosis and bipolar disorder/depression to be severe medically determinable impairments. (R. at 39.) The ALJ further examined Plaintiff's diagnosis of mild alcohol use disorder. (R. at 39; Ex. 6F). The ALJ determined that the evidence before her failed to demonstrate ongoing alcohol abuse after the AOD, and instead that the impairment was in full remission during the relevant time period. (R.

at 39.)

*Step Three*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, or medically equaled, the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. at 39-40.) For Plaintiff's multiple sclerosis diagnosis, the ALJ found that the evidence did not include the opinion of a medical expert indicating that Plaintiff's diagnosis caused extreme functional limitations. (R. at 39.) In examining Plaintiff's mental impairments, the ALJ found that Plaintiff experienced either "mild," "moderate," or no limitations. (R. at 40.) Accordingly, the ALJ found that Plaintiff was not disabled.

Between steps three and four, the ALJ is required to consider a claimant's residual functional capacity pursuant to 20 C.F.R. § 404.1520(e), or a claimant's ability to perform physical and mental work activities on a sustained basis, despite any limitations from impairments. Here, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work. (R. at 41.) Such capacity includes the ability to: frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stop, kneel, or crouch, but only occasionally crawl; tolerate occasional exposure to nonweather related extreme cold or heat; tolerate occasional exposure to hazards such as dangerous machinery and unprotected heights; perform simple routine work; occasionally interact with coworkers and the public; and tolerate a low-stress setting. (R. at 41-44.)

*Step Four*. In analyzing the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work as a dog groomer, dog-care worker, "routine" office clerk, and dog walker. (R. at 45). The dog groomer, dog-care worker, and dog walker jobs all exceeded Plaintiff's sedentary exertion level; as to the "routine" office clerk position, the ALJ found that

this past relevant work exceeded Plaintiff's residual functional capacity. (R. at 45.)

*Step Five*. Finally, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 45-46.)

Therefore, ALJ Nagle concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from January 1, 2017 (the amended AOD), through the date of her decision (June 8, 2018). (R. at 46.)

The second issue before the ALJ was whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act. (R. at 36-37.) Because Plaintiff's earnings record demonstrated that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2021, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through that date. (R. at 37, 39.) As such, Plaintiff would have needed to establish disability on or before December 31, 2021 to be entitled to a period of disability and insurance benefits. (R. at 37.)

## IV. ANALYSIS

Plaintiff raises one point of error in her motion for summary judgment, namely, that the ALJ's decision should be reversed because she failed to provide good reasons for according less than controlling weight to the opinions of Plaintiff's treating neurologist, Dr. Ruben Cintron. Defendant argues that the Court should affirm the ALJ's decision because it is supported by substantial evidence. Upon review of the ALJ's decision and the record, the undersigned agrees with Defendant.

### A. Correct Legal Standard

First, in reviewing the record, the ALJ clearly applied the correct legal standard. As noted

above, the ALJ addressed, as appropriate, each part of the five-step sequential evaluation analysis prior to reaching a decision. *See supra* Part III. The ALJ summarized the applicable standard in detail and then applied that standard faithfully to the facts of the case. (R. at 37-46.) Accordingly, the ALJ made no clear error of law in this regard.

### B. Substantial Evidence in the Record

#### 1. *Dr. Cintron*

Here, as to Dr. Cintron's medical opinions, ALJ Nagle stated:

> I gave little weight to the opinions of treating physician neurologist Dr. Cintron (Exhibits 4F, 11F, 16F) who opined limitation of lifting to 10 pounds with disabling psychological functional limitations. While Dr. Cintron is a treating source with a longitudinal treating relationship, these opinions appear to have largely been based upon the claimant's subjective reports that, as noted above, are not deemed reliable. Dr. Cintron's most recent treatment notes documented near normality (Exhibit 12F/13). The opinions of the State agency consultants and those of consultative examiner Dr. Tuwiner contradict Dr. Cintron's opinions. Furthermore, the issue of the claimant's ability to work is reserved to Commissioner and is conflict with her noted work activity during the relevant period.

(R. at 44.)

Plaintiff argues that the Court should remand Plaintiff's claim to Defendant because the ALJ committed reversible error in analyzing the medical evidence from Dr. Cintron. (Pl.'s Mem. Supp. at 8.) Plaintiff raises two broad points: (1) the ALJ failed to apply the controlling weight test; and (2) the ALJ failed to give the necessary "good reasons" for according less than controlling weight to Dr. Cintron's opinions, and the reasons she gave are not supported by substantial evidence. The undersigned will address each in turn.

#### i. **Controlling Weight Test**

A treating source medical opinion as to the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is well-supported by medically-acceptable clinical

and laboratory diagnostic techniques and *is not inconsistent with other substantial evidence in the case record*. 20 C.F.R. § 404.1527(c)(2). Furthermore, if a treating source is not entitled to controlling weight, the ALJ is required to "give good reasons" for the weight given in her decision. *Id.* Still, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted). Ultimately, the ALJ "holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id*. at 267-68 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)).

Here, Plaintiff argues that the ALJ failed to apply the controlling weight test, and instead "evaluated other opinion evidence such as the state agency doctors." (Pl.'s Mem. Supp. at 10.) Further, Plaintiff argues that the ALJ "started analyzing Dr. Cintron's opinions with the factors outlined in 20 C.F.R. § 404.1527(c) before determining whether his opinions were well-supported and not inconsistent with other evidence." (Pl.'s Mem. Supp. at 10.)

Plaintiff's argument here is without merit, and the undersigned finds that the ALJ did in fact properly apply the controlling weight test. ALJ Nagle acknowledged that Dr. Cintron was Plaintiff's "treating neurologist," but noted that his report contradicted his later treatment notes, the reports of the State agency consultants, Dr. Tuwiner's report, and Plaintiff's work activity during the relevant period.

Dr. Cintron's records indicate his belief that Plaintiff's condition prevented her from sustaining regular work activity for a period in both October 2015 (R. at 356) and July 2017 (R. at 445). However, as the ALJ found, these "temporary period[s] of exacerbation" of symptoms

are evident on the record. (R. at 43.) Regarding Dr. Cintron's October 2015 report finding Plaintiff disabled, Dr. Cintron's earlier notes indicate Plaintiff's examinations in December 2014 and August 2015 were "completely normal" (R. at 334) and "normal, including cranial nerves testing and motor testing" (R. at 352). Similarly, although Dr. Cintron indicated that Plaintiff was unfit to work in a July 21, 2017 note (R. at 445), another note from July 7, 2017 indicated that Plaintiff was "better now" from a recent relapse (R. at 447). Then, Dr. Cintron's later note, in October 2017, indicated that Plaintiff's visual changes were "back to normal, and her gait is quite good." (R. at 457.) In December 2017, Dr. Cintron's notes indicated that Plaintiff's "cranial nerve testing, motor testing, and gait are normal now" and that her treatment "is working and she is doing better." (R. at 458.)

The reports of three State agency physicians and Dr. Seth Tuwiner throughout 2015 and 2016 also contradict Dr. Cintron's conclusions rendering Plaintiff disabled. Dr. Robert McGuffin in October 2015 concluded that Plaintiff was fit to perform medium work. (R. at 105-07.) Then, in December 2015, psychologist Howard Leizer, Ph.D. concluded that Plaintiff "should be able to perform simple, routine work which does not require a great deal of contact with coworkers and the public." (R. at 107-09.) In April 2016, Dr. Gene Godwin found that Plaintiff was fit for light work. (R. at 121-23.) Finally, in April 2016, Dr. Leizer found that Plaintiff's "[m]ood and irritability issues would not prevent her from concentrating to complete simple, routine tasks that do not require regular interaction with the public." (R. at 124.) Similarly, Dr. Tuwiner performed a consultative examination of Plaintiff in September 2016 in connection with her disability claim. (R. at 406.) Dr. Tuwiner found that Plaintiff's results were "grossly normal." (R. at 408.)

Finally, the ALJ found Dr. Cintron's conclusions conflicted with Plaintiff's sustained employment during the relevant period. Plaintiff began working as a facilities supervisor in

9

September 2017. (R. at 62-63.) Although the ALJ conceded that Plaintiff's employment did not constitute substantial gainful activity, she still reasonably deemed Plaintiff's work relevant to assessing Plaintiff's functional abilities. (R. at 39.)

The weight of the medical evidence contained in the record, in addition to Plaintiff's sustained employment during the relevant period, is therefore inconsistent with Dr. Cintron's October 2015 and July 21, 2017 conclusions that Plaintiff's condition rendered her disabled. Accordingly, the ALJ properly applied the controlling weight test.

### ii.     ALJ's Reasons

Second, the majority of Plaintiff's argument is that the ALJ failed to give "good reasons" as to why she gave Dr. Cintron's opinions less than controlling weight. When a treating source is not entitled to controlling weight, the ALJ must apply a number of factors and "give good reasons…for the weight" the ALJ gives to the treating physician. 20 C.F.R. § 404.1257(c)(2). Some factors the ALJ may use in determining whether to give a treating physician controlling weight include the length of the treatment relationship, supportability, consistency, and "any factors…which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1257(c)(1)-(6).

Here, the ALJ clearly outlined why she gave Dr. Cintron's opinions little weight. Specifically, the ALJ gave three reasons: (1) his opinions were largely based on Plaintiff's subjective reports, which the ALJ had previously deemed unreliable; (2) his most recent treatment notes documented "near normality"; and (3) other medical opinions—the State agency consultants and Dr. Tuwiner's—contradicted Dr. Cintron's opinions. The undersigned will examine each reason in turn.

*First*, Plaintiff argues that the ALJ did "not provide any concrete proof that Dr. Cintron's

opinions [were] reliant on Ms. Florio's comments as opposed to his expert medical treatment including his admitted longitudinal relationship with Ms. Florio." (Pl.'s Mem. Supp. at 10.) Specifically, the ALJ referred to Dr. Cintron's August 2015 records in which Dr. Cintron checked off symptoms based upon Plaintiff's self-reported, subjective complaints. (R. at 355-56.) In the record at issue, Dr. Cintron imposed limits on Plaintiff based on how she evaluated her own symptoms. For example, the records states that Plaintiff "[m]ay not attend social functions *if* not feeling well (if anxious, agitated, or depressed)." (R. at 356.) Dr. Cintron's March 2018 evaluation was also in the form of self-report check boxes.[2] (R. at 494-96.)

Because these opinions were based on Plaintiff's reporting, the ALJ gave them little weight because she had previously deemed Plaintiff's reports unreliable. Specifically, the ALJ noted in her opinion that "the claimant was not candid and forthcoming when questioned regarding cannabis usage." (R. at 43.) During Plaintiff's testimony at the hearing, she initially denied cannabis usage for a few years, but then later indicated that she had "possibly" used the substance more recently. (R. at 43.) Most importantly, Plaintiff denied daily usage of cannabis. (R. at 43.) As the ALJ notes, this denial is in direct contradiction with several of her treatment notes in January, July, and December of 2017, indicating daily cannabis usage. (R. at 43, Exs. 15F/7, 15, 22.) Because of this contradiction, the ALJ stated: "I do note her lack of candor tends to reduce the reliability of her testimony *and subjective reports*." (R. at 43.) Overall, the ALJ found Plaintiff's testimony "inconsistent, not forthcoming, and ultimately unpersuasive." (R. at 43.)

---

[2] The fact that these particular medical records are based upon Plaintiff's subjective complaints does not necessarily indicate that all of Dr. Cintron's conclusions were made in this way. Regardless, the undersigned finds that the ALJ could reasonably conclude that Dr. Cintron's findings were substantially based off of Plaintiff's subjective complaints given the detail of this particular medical record, the lack of detail in other medical records, and Plaintiff's longitudinal relationship with Dr. Cintron.

*Second*, Dr. Cintron's most recent treatment notes indicate "near normality." (R. at 44.) Despite Dr. Cintron's July 17, 2017 note that Plaintiff was disabled and could not be gainfully employed (R. at 445), his other 2017 notes in July, August, and October of 2017 indicate that she was doing "better" (R. at 447), that "her gait is normal" (R. at 456), and "her visual changes are now back to normal, and her gait is quite good" (R. at 457). Then, in December 2017, Dr. Cintron again stated that Plaintiff was "doing better" after infusions of Tysabri. (R. at 458.)

*Third*, and as explained above, the State agency physicians' opinions and Dr. Tuwiner's opinion contradicted Dr. Cintron's opinions. All three State agency physicians indicated that Plaintiff was able to do at least some form of work: Dr. McGuffin evaluated Plaintiff in October 2015 (R. at 105-07); Dr. Leizer evaluated Plaintiff in December 2015 (R. at 107-09); and Dr. Godwin evaluated Plaintiff in April 2016 (R. at 121-23). Finally, Dr. Tuwiner evaluated Plaintiff in September 2016, and reported Plaintiff's physical state to be "grossly normal." (R. at 406-08.) Plaintiff also reported to Dr. Tuwiner that her multiple sclerosis was "stable." (R. at 406-08.)

In sum, the undersigned finds that the substantial evidence supports ALJ Nagle's decision to give Dr. Cintron's opinions little weight, and that the ALJ gave good reasons for doing so.

## V. R<small>ECOMMENDATION</small>

For the reasons set forth above, the undersigned U.S. Magistrate Judge recommends that the Court enter an order (1) granting Defendant's Cross Motion for Summary Judgment (Dkt. 19); (2) denying Plaintiff's Motion for Summary Judgment (Dkt. 16); and (3) affirming the final decision of Defendant.

VI. N<small>OTICE</small>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

September 9, 2020
Alexandria, Virginia